**This order is SIGNED.**

**Dated: October 12, 2023**




**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BLACK IRON, LLC,<br><br>                          Debtor. | Bankruptcy Case No. 17-24816<br><br>Chapter 11<br><br>Judge William T. Thurman |

**MEMORANDUM DECISION GRANTING MOTIONS FOR SUMMARY JUDGMENT REGARDING BANKRUPTCY COURT'S JURISDICTION TO DETERMINE 2015 TAXES**

---

Just over three years ago, the Debtor's chapter 11 plan and subsequent confirmation order provided for the Bankruptcy Court's broad retention of potential jurisdiction to resolve both pre- and postpetition tax claims asserted by Iron County, Utah ("Iron County") if settlement efforts failed, but with a critical caveat that expressly reserved all of the relevant parties' "rights, claims, privileges, defenses, or arguments, including any Utah state law remedies, defenses and jurisdictional issues." Although a December 2020 status report indicated that settlement was unsuccessful and that the parties would submit a proposed schedule for resolving the tax claims within 30 days, the matter lay dormant until December 2022 when the Debtor's successor, Utah Iron, LLC ("Utah Iron"), filed a motion to compel the testimony of an Iron County Commissioner, which ultimately led to the Court's entry of a scheduling order regarding the tax claims in April 2023 recognizing the dispute as a contested matter under Federal Rule of Bankruptcy Procedure

1

9014. As relevant here, the scheduling order provided for any motions contesting this Court's jurisdiction over particular tax claims to be filed by June 5, 2023. On June 5, both the Utah State Tax Commission ("Tax Commission") and Iron County filed motions seeking a determination that this Court either cannot or should not exercise jurisdiction to determine the amount or legality of the tax obligation for the 2015 tax year.[1] Utah Iron responded, the movants replied, and the Court heard oral arguments on August 30 and took the matter under advisement. After thorough consideration of the parties' submissions, oral arguments, and other matters of record, as well as an independent review of applicable law, the Court now issues this Memorandum Decision to explain why the motions will be granted.

## I. BACKGROUND[2]

As provided in Article XIII, § 6(3)(b) of the Utah Constitution and Utah Code Annotated ("U.C.A.") § 59-2-201(1)(a)(v) and (vi), the Tax Commission centrally assesses certain property "[b]y May 1 of each year . . . at 100% of fair market value, as valued on January 1," which includes "all mines and [pertinent] mining claims" as well as "all machinery used in mining [and] all property or surface improvements upon or appurtenant to mines or mining claims." In turn, U.C.A. § 59-2-201(3) describes the contours and methodologies of the Tax Commission's assessment process, while U.C.A. § 59-2-207(1) requires mine owners and operators to file a detailed report with the Tax Commission by March 1 of each year in connection with that process.

The Debtor's predecessor, CML Metals Corporation ("CML"), filed the required report with the Tax Commission on or about March 1, 2015, and the Tax Commission issued its assessment on or about May 1, 2015 with a valuation of approximately $65 million as of January

---

[1] It is noted here that the Tax Commission and Iron County's interests are effectively synonymous in this contested matter given that the Tax Commission assesses the property and Iron County collects the taxes assessed.
[2] The parties either stipulated to all of the facts that are relevant to the Court's decision, or the facts are indisputable matters of record of which the Court takes judicial notice under Federal Rule of Evidence 201.

1, 2015. CML sold the mine to the Debtor just four days later on May 5, 2015.[3] Neither CML nor the Debtor timely appealed the 2015 assessment under U.C.A. § 59-2-1007(1) even though CML had done so for 2014 and the Debtor would later do so for 2016-19. The Debtor did, however, file a Request to Re-Open 2015 Assessment with the Tax Commission in July 2016 followed by an Opposition from the Property Tax Division of the Tax Commission and a Reply by the Debtor, all of which culminated in the Tax Commission's November 1, 2016 Order Dismissing Petitioner's Request to Reopen Assessment ("Dismissal Order").[4]

Subsequently, the Debtor filed a voluntary chapter 11 bankruptcy petition on June 1, 2017, and Iron County ultimately filed an amended proof of claim #2-3 covering the Tax Commission's 2014-16 assessments, which included a secured claim of just over $1 million for the 2015 tax year. The Debtor filed an objection to Iron County's proof of claim.[5] Meanwhile, the Court presided over extensive litigation in consolidated adversary proceedings #17-2088 and 17-2094 between the Debtor, Wells Fargo Rail Corporation, and other parties that did not include the Tax Commission or Iron County, which resulted in an August 30, 2019 Memorandum Decision After Trial and accompanying Judgment that is currently on appeal before the Tenth Circuit Court of Appeals. Among many other things, the Court determined in the context of a fraudulent transfer analysis that the value of the mine at the time of the May 5, 2015 sale was "around $12 to $14 million" and that CML's receipt of $13,784,346.91 was "reasonably equivalent value" for what was acquired.[6]

---

[3] Iron County Motion, Undisputed Facts #1-5.
[4] Tax Commission Motion, Exhibit 2.
[5] Case #17-24816, docket #169.
[6] Adversary Proceeding #17-2094, docket #591, p. 34.

On September 3, 2020, the Court entered its Order Confirming Debtor's Second Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement ("Confirmation Order").[7] The Plan defines the "Iron County Tax Claims" as "both the prepetition and the postpetition Claims by Iron County, Utah against Debtor for real and personal property taxes," while the Plan defines the "Iron County Proceedings" as the Debtor's outstanding objection to Iron County's proof of claim and the administrative appeals pending before the Tax Commission for the 2014 and 2016-19 tax years "with respect to the Iron County Tax Claims." Article IV.A. of the Plan provides that "[o]n the Effective Date, Utah Iron will succeed to Debtor's liability for payment of the Class 1 Claim by Iron County, and will acquire the Mine subject to Iron County's lien on the Mine under Utah law."[8] Article XI of the Plan addresses the Court's retained jurisdiction, both Article IV.A. of the Plan and ¶ 20 of the Confirmation Order provide a procedure for first attempting a consensual resolution of the Iron County Tax Claims then seeking the Court's assistance if necessary, and ¶ 20 of the Confirmation Order also states as follows: "In connection with the stipulation evidenced by this paragraph and as a material inducement for Iron County changing its Ballot from rejection to acceptance of the Plan, the parties have not conceded the correctness of any parties' position or claims, and further are not waiving any of their rights, claims, privileges, defenses, or arguments, including any Utah state law remedies, defenses and jurisdictional issues, all of which they have expressly reserved." Finally, the Introduction and Summary of the Plan provides in bold, italicized, and underlined text that "[e]xcept for Insider Claims, ***all allowed Claims—regardless of classification, secured or unsecured status, or priority—will be Paid in***

---

[7] Case #17-24816, docket #575. In brief, the Plan at docket #557 provides for the transfer of "all or substantially all of [the] Debtor's assets" to the newly organized Utah Iron, owned by Plan Sponsors Gilbert Development Corporation and SA Recycling, LLC, after which the Debtor would eventually be "dissolved or liquidated."

[8] Utah Iron disputed its characterization as "a successor to the Debtor" in the Tax Commission's Statement of Facts #18, but it is clearly a successor to the Debtor at least in a lay sense, which is the only sense in which that term is used in this Memorandum Decision. The Court expresses no opinion regarding any legal consequences that may result from Utah Iron's acquisition of property and debt in connection with the confirmed plan.

4

***Full by Utah Iron on or within 10 days of the Effective Date or the date of their Final Allowance***," and further that "***[t]he payments to Creditors under the Plan will not . . . be dependent in any way on Utah Iron's success in reopening the Mine or on its profitability***."

After the parties failed to reach an informal resolution, the Iron County Tax Claims were teed up again with Utah Iron's December 2022 motion to compel the testimony of an Iron County Commissioner,[9] which ultimately led to the Court's entry of its April 20, 2023 Order Governing Scheduling and Preliminary Matters on Resolution of Iron County Tax Claims ("Scheduling Order").[10] Paragraph 6 of the Scheduling Order detailed the parties' differing views regarding the Court's jurisdiction over the tax years in question and required that "[i]f the parties are contesting jurisdiction, no later than **June 5, 2023**, Iron County and/or [the Tax Commission] must file a motion regarding their concerns/disputes regarding the Court's jurisdiction." The Tax Commission and Iron County each filed such a motion on June 5 contesting the Court's jurisdiction solely as to the 2015 tax year,[11] Utah Iron filed a combined Response to both motions on July 21,[12] and the movants filed separate Replies on August 10 and 11.[13] Per the notices of hearing filed on June 6,[14] the Court heard oral arguments on August 30 and took the matter under advisement.

## II. LEGAL STANDARD[15]

"Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the

---

[9] Case #17-24816, docket #618.
[10] *Id.* at docket #647.
[11] *Id.* at docket #s 649 and 650.
[12] *Id.* at docket #654.
[13] *Id.* at docket #s 655 and 656.
[14] *Id.* at docket #s 651 and 652.
[15] The Tax Commission styled its motion as a Motion for Order that Court Lacks Jurisdiction Over 2015 Tax Amounts, while Iron County styled its motion as a Motion for Summary Judgment Regarding 2015 Assessment. At oral argument, the movants and Utah Iron agreed that a summary judgment standard should guide the Court's analysis.

5

light most favorable to the non-moving party, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[16] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17] Stated another way, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"[18] Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."[19] In sum, as stated in the 1963 Advisory Committee Notes to Rule 56, "[t]he very mission of the [salutary device of summary judgment] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." This standard will be applied herein.

### III. DISCUSSION

The movants raise three main arguments as to why this Court either cannot or should not exercise jurisdiction to determine the amount or legality of the 2015 tax assessment. First, the movants argue that the Court lacks jurisdiction under 11 U.S.C. § 505(a)(2)(A)[20] because the 2015 assessment was already "contested before and adjudicated by" the Tax Commission before the Debtor filed for bankruptcy. Second, the movants argue that the Court lacks jurisdiction under § 505(a)(2)(C) because "the applicable period for contesting or redetermining [the] amount under applicable nonbankruptcy law has expired." And third, the movants argue that even if the Court

---

[16] *Expert S. Tulsa, LLC v. Cornerstone Creek Partners, LLC (In re Expert S. Tulsa, LLC)*, 534 B.R. 400, 408 (10th Cir. BAP 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).
[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[18] *Id*. at 324.
[19] *Anderson*, 477 U.S. at 252.
[20] All future statutory references are to title 11 of the United States Code unless otherwise indicated.

6

does have jurisdiction to determine the 2015 tax obligation, it should exercise its discretion to abstain from such a determination under 28 U.S.C. § 1334(c)(1) given the specifics of the 2015 assessment. The Court will address each argument in turn.

A.     § 505(a)(2)(A)

Section 505(a)(1) states that "[e]xcept as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." In turn, § 505(a)(2)(A) states that "[t]he court may not so determine the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title." Here, the movants argue that the 2015 assessment itself, or at least the failed 2016 effort to reopen the assessment, constitutes a sufficient contest and adjudication that strips this Court of jurisdiction. Utah Iron argues that the assessment itself cannot be the contest and adjudication, which requires a determination by an appropriate tribunal on the merits. Based on the plain language of § 505(a)(1), the Court disagrees that the assessment itself can serve as the requisite contest and adjudication, since both of those terms are used in that subsection in non-synonymous ways. The Court agrees, however, that the Tax Commission's Dismissal Order bars the Court's exercise of any otherwise available jurisdiction under § 505(a)(2)(A).

Citing solely to *In re Tapp*, 16 B.R. 315 (Bankr. D. Alaska 1981) in its Response, Utah Iron argues that the Tax Commission's Dismissal Order was only a "procedural decision" rather than a "ruling on the merits," but *Tapp* was only dealing with a true prepetition default judgment in which the future debtors never appeared or litigated before any tribunal. *Tapp* also does not

7

require a ruling "on the merits" in the sense of a full contested determination of the amount or legality of any taxes owed, which is a view supported by the weight of other binding and persuasive authority. *See, e.g.*, *City Vending of Muskogee, Inc. v. Oklahoma Tax Commission*, 898 F.2d 122 (10th Cir. 1990) (unsuccessful administrative protest followed by short-lived court actions); *In re Cody, Inc.*, 338 F.3d 89 (2d Cir. 2003) (various prepetition proceedings); *In re Baker*, 74 F.3d 906 (9th Cir. 1996) (stipulated judgment). And just as in *City Vending*, "[a]lthough the merits of [Utah Iron's] claims were never addressed, the instant [case] does not present the situation where the debtor has failed to assert any challenge to the assessment."[21] The Debtor submitted its request to reopen the 2015 assessment in July 2016, the Property Tax Division of the Tax Commission responded, and the Debtor replied. The Tax Commission then issued its substantive Dismissal Order on November 1, 2016, which concluded with a Notice of Appeal Rights that the Debtor did not pursue either in the form of Tax Commission reconsideration or judicial review. The Court finds that these acts constitute a sufficient contest and adjudication for purposes of § 505(a)(2)(A).

Moreover, in *City Vending* the Tenth Circuit addressed the "[t]wo policies [that] underlie § 505's grant of federal authority to determine state tax matters. First, § 505 allows the prompt resolution of a debtor's tax liability, where that liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition. Secondly, § 505 protects creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest. A federal court, therefore, will have jurisdiction under § 505 to consider state tax issues where the debtor has failed to assert any challenge to the assessment prior to commencing bankruptcy proceedings, or where the debtor has challenged the assessment through state

---

[21] *City Vending*, 898 F.3d at 125.

proceedings which are still pending at the time the bankruptcy petition is filed."[22] Neither of those policies is at issue here given that the Debtor transferred its assets and liabilities to Utah Iron years ago and that the confirmed plan explicitly assured full payment to all creditors regardless of the mine's reopening or profitability. Accordingly, the Court concludes on the undisputed facts that it lacks jurisdiction to determine the 2015 taxes under § 505(a)(2)(A).

**B.    § 505(a)(2)(C)**

Given the Court's decision with respect to § 505(a)(2)(A), the Court declines to address the movants' additional § 505(a)(2)(C) argument due to both the lack of necessity and the motions' summary judgment posture. Added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 505(a)(2)(C) strips the Court of jurisdiction to determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." While conceding that its time may have lapsed under U.C.A. § 59-2-1007, Utah Iron argues that it retains the ability to contest the 2015 assessment under either U.C.A. § 59-2-1321 or -1327. The former allows certain action by a county legislative body "upon sufficient evidence being produced that property has been either erroneously or illegally assessed," while the latter allows a taxpayer to pay an assessed amount under protest and then sue the taxing authority.

A number of factual and legal issues preclude summary judgment on this question. For just one example, Utah Iron asserts that the Court's reasonably equivalent value determination in the Wells Fargo Rail Corporation adversary proceedings establishes the fair market value of the mine—which was more than $50 million less than the 2015 assessment—while the Tax

---

[22] *Id.* at 124-25 (internal citations omitted).

Commission responds that the movants were not parties to that action, the Court did not make a fair market value determination at all let alone as of January 1, 2015, and the 2015 assessment was based on many factors including the detailed information provided by CML to the Tax Commission. The Tax Commission also alleges that its 2015 valuation was roughly consistent with its 2014 and 2016-19 valuations. On top of the disputed factual issues that these competing allegations present, they also raise legal issues that were either insufficiently briefed or not briefed at all. In that same vein, there are other unexplored legal or mixed questions including the applicability of § 59-2-1321 to centrally assessed property and the availability of § 59-2-1327 after more than eight years since the assessment date. In any event, the Court expresses no opinion regarding the application of § 505(a)(2)(C) to the 2015 assessment and likewise no opinion on any disputed factual or legal issues that Utah Iron may raise in another appropriate forum.

C. **Permissive Abstention**

Even if this Court does have jurisdiction to consider this specific matter, the movants urge the Court to invoke its authority under 28 U.S.C. § 1334(c)(1) to permissively abstain from exercising such jurisdiction. At oral argument, the Court also noted that § 505(a)(1) is itself a discretionary statute, which only provides that the Court "**may** determine the amount or legality of any tax" (emphasis added). But regardless of which section is used, the Court agrees that abstention is appropriate given the unique characteristics of Utah Iron and the 2015 assessment.

Factors relevant to a permissive abstention inquiry under 28 U.S.C. § 1334(c)(1) include "(1) the effect that abstention would have on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of

relatedness of the proceeding to the main bankruptcy case; (7) the substance of the asserted core proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding."[23]  Additional factors guiding a § 505(a)(1) abstention analysis include "(i) complexity of the tax issue; (ii) need to administer the bankruptcy case in an orderly and efficient manner; (iii) whether adjudicating the issue will create a substantial burden on the court's docket; (iv) whether significant time is needed to reach a decision; (v) whether the debtor's asset and liability structure warrants a ruling; and (vi) the potential to prejudice the debtor, taxing authorities, and creditors."[24]

Applying those factors here, the underlying chapter 11 case was commenced over six years ago, and the plan that resulted in the transfer of the Debtor's assets and liabilities to Utah Iron (and the Debtor's eventual dissolution or liquidation) was confirmed over three years ago.  The Plan and Confirmation Order provided for a speedy 90-day negotiating process followed by a status report 15 days thereafter, but no further docket action was taken until late December 2022, and there is now a Scheduling Order in place that contemplates a final pretrial conference regarding the Iron County Tax Claims in mid-May 2024.  The outstanding issues are relatively complex and expert testimony will be necessary, and although the Court has already issued a decision in the Wells Fargo Rail Corporation actions that addresses a reasonably equivalent value analysis, the usefulness of that decision in connection with a 2015 tax assessment is unclear—but since the Court is already currently scheduled to determine the 2014 and 2016-19 taxes, further burden on

---

[23] *In re Thrive Nat'l Corp.*, 605 B.R. 229, 236-37 (Bankr. D. Utah 2019) (Anderson, J.).
[24] *In re Ryckman Creek Resources, LLC*, 570 B.R. 483, 487 (Bankr. D. Del. 2017).

11

the Court to determine the 2015 tax should be theoretically minimal, and this Court's determination of the 2015 tax would likely increase efficiency and judicial economy.

In the opinion of the Court, three factors ultimately tip the scales toward abstention under both § 505(a)(1) and 28 U.S.C. § 1334(c)(1). First, there is no rush to resolve the 2015 tax liability given that the 2015 assessment was issued eight-and-a-half years ago, the Debtor has now been succeeded by Utah Iron, and the remaining Iron County Tax Claims will likely not be resolved for at least another year. Second, the confirmed plan explicitly assures Utah Iron's payment in full of all allowed claims regardless of the mine's reopening or profitability, which further reduces any concerns about the 2015 obligation's connections to estate administration or creditor recovery. Third and most importantly, the 2015 tax year has unique characteristics that are not present with the other Iron County Tax Claims—namely, the failure of CML or the Debtor to timely appeal the 2015 assessment, the existence of the 2016 Tax Commission proceedings resulting in the Dismissal Order, and Utah Iron's factually disputed and legally novel arguments regarding its alleged continuing ability to challenge the 2015 assessment. Whatever rights Utah Iron may still have under U.C.A. § 59-2-1321 and -1327 or otherwise, they all appear to involve county-level actions or state court proceedings along with complex factual questions and issues of state law that are best handled in another appropriate forum. Accordingly, even if jurisdiction otherwise exists, the Court will abstain from the 2015 tax determination under both § 505(a)(1) and 28 U.S.C. § 1334(c)(1).

### IV. CONCLUSION

For the reasons discussed above, the Court finds that it either cannot exercise jurisdiction to determine the 2015 tax obligation now owed by Utah Iron because of the prepetition contest and adjudication, or alternatively that it should not exercise any jurisdiction that may exist given

12

the unique characteristics of the 2015 assessment. The Court does not, however, decide or opine on any disputed factual or legal issues that Utah Iron may raise in another appropriate forum regarding further attempts to challenge the 2015 tax amount. Accordingly, the motions are GRANTED, and the Court will enter a separate Order in accordance with this Memorandum Decision.

-------------------------------------------END OF DOCUMENT-------------------------------------------

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION GRANTING MOTIONS FOR SUMMARY JUDGMENT REGARDING BANKRUPTCY COURT'S JURISDICTION TO DETERMINE 2015 TAXES** will be effected through the Bankruptcy Noticing Center to each party listed below.

Aaron M. Waite
Assistant Utah Attorney General
160 E. 300 S., Fifth Floor
Salt Lake City, UT 84111
    *Counsel for Utah State Tax Commission*

Thomas W. Peters
Peters | Scofield
7430 Creek Road, Suite 303
Sandy, UT 84093
    *Counsel for Iron County*

Ellen E. Ostrow
Foley & Lardner LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
    *Counsel for Utah Iron, LLC*