DAVID W. SCOFIELD - 4140
THOMAS W. PETERS - 8856
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093
Telephone:     (801) 322-2002
Facsimile:      (801) 912-0320
Email: dws@psplawyers.com
          twp@psplawyers.com

*Attorneys for Iron County*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re:<br><br>BLACK IRON, LLC,<br><br>Debtor | Chapter 11 Case No. 17-24816 WTT<br><br>Honorable William T. Thurman |
|---|---|

### IRON COUNTY'S MOTION FOR PROTECTIVE ORDER PRECLUDING OR LIMITING, ON GROUNDS OF LEGISLATIVE PRIVILEGE, IRON COUNTY COMMISSIONERS' DEPOSITIONS

Iron County (the "County"), by and through its undersigned counsel, respectfully submits the following Motion for Protective Order ("Motion"):

### MOTION

**Relief Requested:** Entry of an Order prohibiting the noticed depositions of Iron County Commissioner Marilyn Wood and Iron County Commissioner Mike Bleak from going forward. Alternatively, entry of an Order that written interrogatories be submitted to which the witnesses may respond.

**Grounds:** County Commissioners have testimonial immunity from any questioning delving into the legislative arena. *See Utah Republican Party v. Herbert,* No. 2:14-cv-00876-

DN-DBP, 2015 U.S. Dist. LEXIS 199085, at *7 (D. Utah June 10, 2015) (unpublished) (affirming magistrate judge's order quashing subpoena to testify premised on ruling that "the deposition subpoena impermissibly seeks documents and testimony protected by the state and federal legislative privileges."); *McCray v. Md. DOT,* 741 F.3d 480, 485 (4th Cir. 2014) ("[The legislative privilege] covers state and local legislators, even if the body to which the legislators belong lacks immunity for its legislative acts.")

## MEMORANDUM

## PRELIMINARY STATEMENT

Utah Iron again seeks Iron County Commissioner testimony in violation of the legislative privilege.[1] Ordering that Utah Iron may not depose Iron County's commissioners, at all, would assure that inadvertent disclosure of privileged information will not occur, at all. The United States Supreme Court "has recognized, ever since *Fletcher v. Peck,* 6 Cranch 87, 130-131 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore 'usually to be avoided.' *Citizens to Preserve Overton Park v. Volpe,* 401 U.S.

---

[1] "If [an] investigative topic concerns a subject on which legislation ***could be had***, it is related to and in furtherance of a legitimate legislative act." )." *Fann v. Kemp,* 515 P.3d 1275, 1283 (Ariz. 2022); *Ariz. Indep. Redistricting Comm'n v. Fields,* 206 Ariz. 130, 137, 75 P.3d 1088, 1095 (2003) ("The legislative immunity doctrine also functions as a testimonial and evidentiary privilege.") "A legislator engaged in legitimate legislative activities cannot be compelled to testify about those activities or the motives underlying legislative decisions." *Id.* at 1281.Utah Iron could have served a rule 30(b)(6) notice of deposition on Iron County, which would have set forth the limiting matters for examination and which would have allowed Iron County to specify any matters for examination that would invade legislative privilege. Instead, Utah Iron again wishes unfettered examination of Iron County Commissioners as to which there is no prior notice of matters for examination and, so, maximum opportunity for Iron County to enter the waters of privilege, which are undeniably broad, and extract privileged information before it may be perceived that privileged information is even sought. The fact that they are legislators makes it reasonably likely that many questions would impinge on the privilege, in violation of the public policy behind the privilege. The Court, respectfully, must not allow that privilege to be breached.

2

402, 420 (1971)." *See also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 268 n.18, 97 S. Ct. 555, 565 (1977). This avoidance is amplified when the subject of the civil litigation is within the subject of the legitimate legislative sphere. *See Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 503, 95 S. Ct. 1813, 1821 (1975)("once it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference.") *See* Utah Const. Art. XIII, §§ 2, 4, 5(4) (authorizing political subdivisions to tax for all purposes except public schools).

As stated above, this case is about the purely legislative topic of taxation. *see Kimball v. Grantsville City,* 19 Utah 368, 389, 57 P. 1, 7 ("***the constitution has imposed upon the legislative department the duty of exercising the taxing power*** in wisdom and justice and so as to prevent abuses. [Emphasis added]") Iron County's largest ad valorem taxpayer has failed to pay property taxes in nine out of the last ten years (including the tax obligation for CML Metals.) Determining how to tax the residents of Iron County, to keep government running and to provide services to the citizens of Iron County, is certainly within the legitimate legislative sphere.

Alternatively, requiring written interrogatories to be propounded[2] would allow a reasonable opportunity to examine what areas of questioning raise, and specific questions invade, the privilege. Either way, a protective order should enter, protecting the Commissioners against

---

[2] Utah Iron sought to compel Iron County Commissioner Paul Cozzens to testify in deposition about matters covered by the privilege. See Motion to Compel [Iron County Commissioner] Paul Cozzens to Testify, filed December 29, 2022, ECF No. 618 ("Cozzens' Testimony Motion"), and ordered that "[i]f Utah Iron desires to continue with the questions to Paul Cozzens, it shall serve him with a list of questions, including an explanation of relevancy for each question no later than March 15, 2023. Paul Cozzens shall serve a response to the questions or provide a privilege log to questions he chooses not to answer and provide reasons for the same as per each question no later than April 4, 2023." *Id.,* at 2, ¶ 1

3

questioning by way of the noticed depositions. [3]

**I.  QUESTIONS CONCERNING THE EXISTENCE AND SCOPE OF EVIDENTIARY PRIVILEGES IN THIS MATTER ARE GOVERNED BY UTAH STATE LAW.**

This matter involves a taxpayer's failure to pay ad valorem taxes assessed by the USTC pursuant to UTAH CODE ANN. § 59-2-201 and collectible under Utah law by Iron County. No federal issues affect the substantive components of those matters and this matter is, in that sense, the same as a diversity action in district court. Where state law provides the substantive basis for decision, the state law on privileges must be applied. *See Hartleib v. Weiser Law Firm, P.C.,* 861 Fed. Appx. 714, 720 (10th Cir. June 21, 2021) ("In a diversity case such as this one, decisions about the applicability and scope of a privilege are governed by state law.") (unpublished).

This requirement of applying state law regarding privileges where state substantive law controls, also applies in bankruptcy courts. *See Doe v. Archdiocese of Milwaukee,* 772 F.3d 437, 440 (7th Cir. 2014) ("Federal Rule of Evidence 501 provides that 'in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.' That same rule governs actions in the bankruptcy court. *See* Fed. R. Bankr. P. 9017.[4]

---

[3] And, as far as the utility of the testimony of commissioners as individuals, no individual commissioner makes decisions on behalf of, or can bind, Iron County. Different commissioners may have completely different potential legislative possibilities they examine long before notifying other commissioners of their thoughts or proposing, if ever, legislation pertaining to the issues. The motivation for considering such potential legislative action is immune.

[4] The County notes that the federal common law recognizes the legislative privilege-- *see League of Women v. Johnson,* 2018 U.S. Dist. LEXIS 86398, *7, (E.D. Mich. May 23, 2018) (unpublished) ("Federal common law extends the absolute legislative immunity granted by the Federal Speech or Debate Clause to state legislators. . . . For state legislators involved in federal question cases, legislative privilege protects state legislators and their legislative staff from compelled disclosure of documentary or testimonial evidence relating to actions taken within the scope of legitimate legislative activity."), the attorney/client privilege, *see Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264, (10th Cir. 1999) ("Federal common law governs control of a debtor's [attorney-client] privilege.") and the work product doctrine. *See Galbraith v. State Farm*

*Footnote Continued on Next Page*

Utah law on legislative privilege is clear:[5] "These constitutional provisions have been interpreted to grant a privilege from suit to legislators, allowing legislators to speak without fear of civil or criminal repercussions, and encouraging full, open, and candid communication and discussion, an inherent necessity in the legislative process." *Riddle v. Perry,* 2002 UT 10, ¶ 8, 40 P.3d 1128, 1131-32.[6]

## II. THE LEGISLATIVE PRIVILEGE PROTECTS COMMISSIONERS AGAINST BEING COMPELLED TO TESTIFY ABOUT THEIR LEGISLATIVE DUTIES OR THEIR MOTIVES IN DISCHARGING THOSE LEGISLATIVE DUTIES.

The speech and debate clause of the Utah Constitution, in Article VI, § 8, embodies the common law legislative privilege, originally applicable only to the state legislators: "[F]or words used in any speech or debate in either house, [a legislator] shall not be questioned in any other place." *Id.* The Utah Legislature expanded the legislative privilege to other public officials. *See*

---

*Fire & Cas. Co.,* 2018 U.S. Dist. LEXIS 232123, *14 (W.D. Okla. April 27, 2018) (unpublished) ("Based on Plaintiffs' evidentiary showing (via Ms. Galbraith's affidavit) the Court could find Plaintiffs' claim log (in all its iterations) to fall within the work-product protection based on federal common law.")-- such that, even if federal law were to provide the basis for the decision of this Court, the outcome should be the same.

[5] In *Riddle v. Perry,* 2002 UT 10, ¶ 8, 40 P.3d 1128, 1131-32 the Court confronted a charge of bribery against a legislator by a witness at a hearing on a proposed bill. While "the purpose of the hearing was not to discuss bribery, the fact that the bill itself was the topic of discussion makes [the] allegation relevant. *Id.* at 1134, § 18. The Utah Supreme Court pointed to a section of *Tenney v. Brandhove,* 341 U.S. 367, 372-375 & n.5, 95 L. Ed. 1019, 71 S. Ct. 783 (1951): "As the United States Supreme Court has noted:" 'in order to enable and encourage a representative of the public to discharge his [or her] public trust with firmness and success, it is indispensably necessary, that he [or she] should enjoy the fullest liberty of speech, and that he [or she] should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence.'"*[Tenney]*, 341 U.S. at 373 (quoting James Wilson, II Works of James Wilson 38 (Andrews ed. 1896))(see this case generally for a history of legislator privilege)." *Riddle,* at 1131-32, ¶ 8.

[6] The Utah Supreme Court, in *Riddle* held that "legislative witnesses must be given an absolute privilege[.]" *Id.* at 1131, ¶ 7.

5

Utah Code Ann. §78B-1-137(5) ("A public officer cannot be examined as to communications made in official confidence when the public interests would suffer by the disclosure."); *Bohn v. Salt Lake City,* 79 Utah 121, 161, 8 P.2d 591, 606 (1932) (Hansen, J., concurring) ("When, however, the members of a city council or city commission are engaged in passing an ordinance which is legislative in character, they are entitled to the same privileges and prerogatives as members of the state Legislature, and their motives are not even open to judicial inquiry."); *Accord McCray v. Md. DOT,* 741 F.3d 480, 485 (4th Cir. 2014) ("[The legislative privilege] covers state and local legislators, even if the body to which the legislators belong lacks immunity for its legislative acts.")

"The Supreme Court has recognized that common law legislative immunity, akin to that embodied in the Speech or Debate Clause, extends to state legislators while acting in a legislative capacity. *Bogan v. Scott-Harris,* 523 U.S. 44, 49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)." The legislative privilege provides not merely an immunity against suit, it also operates as a testimonial privilege: "We have no doubt that Senator Gravel may not be made to answer -- either in terms of questions or in terms of defending himself from prosecution -- for the events that occurred at the subcommittee meeting." *Gravel v. United States,* 408 U.S. 606, 616, 92 S. Ct. 2614, 2622 (1972) *Accord Fann v. Kemp,* 253 Ariz. 537, 543, 515 P.3d 1275, 1281 (Ariz. 2022); Consequently, "legislative privilege also serves as a testimonial and evidentiary privilege." *Id.*; *Ariz. Indep. Redistricting Comm'n v. Fields,* 206 Ariz. 130, 137, 75 P.3d 1088, 1095 (2003) ("The legislative immunity doctrine also functions as a testimonial and evidentiary privilege.") Because any questions, given the nature of the case, would bear on the County Commission's legislative taxation functions, there is no basis for Utah Iron's continuing assault on the Iron County Commissioners' entitlement to legislative privilege.

### A. The County's Budget Appropriation Process, Revenue Analysis and Setting of Tax Rates and Levies Are Affected by Unpaid, Assessed Taxes; the Legislative Privilege Applies to the Commissioner's Investigations.

One of the County's largest sources of revenue comes from the collection of property taxes. The collected revenues in any given year are used by the County Commissioners in the legislative component of the County's budget appropriation process, statutorily-defined as a legislative function. *See* UTAH CODE ANN. § 17-53-302(10) (("if the county executive is an elected county executive, exercise a power of veto over the ***legislative enactments by the county legislative body, which are defined as county ordinances and budget appropriations,*** and include an item veto upon budget appropriations, in the manner provided by the optional plan of county government[ (emphasis added)].[7] Revenue shortfall, caused by low valuations or nonpaying taxpayers may be addressed legislatively, by change in tax rates or levies. Therefore, the legislative privilege applies. *See E.E.O.C. v. Washington Suburban Sanitary Com'n,* 631 F.3d 174, 180-81 (4th Cir. 2011) ("Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes."); *Butnick v. McLean,* 76 F.3d 611, 613 (4th Cir. 1996) (local legislators entitled to testimonial privilege for legislative acts); *see also Fann,* 515 P.3d at 1282-83.

The legislative privilege applies to investigations by any Commissioner to apprise themselves of facts before making informed decisions on governance. All investigative and fact-finding

---

[7] Currently, because Iron County has not adopted a County Council/County Executive form of government, all legislative and executive authority resides in the County Commission. *See Walker v. Weber County,* 973 P.2d 927, 931, *overruled in part on other grounds, Burr v. City of Orem,* 2013 UT 57, 311 P.3d 103 ("the present County Commission exercises both the powers of the executive and the legislative branches, powers that will be split between the new County Executive and the County Council under the proposal.") Thus, the Iron County Commission exercises the same legislative function of budget appropriations for the County as a County Council performs in counties which have adopted the County Council/County Executive form of government.

measures employed with respect to a subject on which legislation may occur are privileged. *See id.* at 1284-85. A "legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change[.]" *McGrain v. Daugherty,* 273 U.S. 135, 175, 47 S. Ct. 319, 329, 71 L. Ed. 580, 593 (1927). *See also McSurely v. McClellan,* 553 F.2d 1277, 1287 (D.C. Cir. 1976) (*en banc*), *cert. dismissed sub nom. McAdams v. McSurely,* 438 U.S. 189, 98 S. Ct. 3116, 57 L. Ed. 2d 704 (1978)) ("The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege")

"If [an] investigative topic concerns a subject on which legislation **could be had**, it is related to and in furtherance of a legitimate legislative act." *Fann,* 515 P.3d at 1283 (cleaned up & emphasis added). "A legislator engaged in legitimate legislative activities cannot be compelled to testify about those activities or the motives underlying legislative decisions." *Id.* at 1281. A shortfall of revenue caused by taxpayers that do not pay their taxes affects the County's ability to operate.

When the County needs more revenue because taxpayers do not pay their taxes, it may exercise its purely legislative tax function to tax, *see Kimball v. Grantsville City,* 19 Utah 368, 389, 57 P. 1, 7 ("***the constitution has imposed upon the legislative department the duty of exercising the taxing power*** in wisdom and justice and so as to prevent abuses. [Emphasis added]"); see also Utah Const. Art. XIII, § 5(4) (authorizing municipalities to impose taxes). The legislative tax function may entail tax by judgment levy, another taxing function, to make up the difference in unpaid taxes—or it may bond, cut programs, lay off employees, delay expenditures and such other legislative decisions as may be required to operate. Therefore, any Commissioner's thoughts, investigations, or discussions about the topic of the value of the mine

8

concerns available revenues to the County and the legitimate legislative subject matter of taxing. Passing laws to avoid, or to fill, deficits caused by taxpayer nonpayment, whether they be additional taxes or alternative measure to keep the County afloat, are legislative matters. These changes may include legislation changing the tax rate or imposing a judgment levy in order to keep County government functioning and therefore commissioners may not be compelled to testify about those matters or any of their motives relating to the exercise of their legislative function. And, where "legislative immunity or privilege applies to either testimony or documents, it is absolute. *See Fann,* 515 P.3d at 1281.

An investigation of the value of the mine and Black Iron's nonpayment of taxes could lead to legislation at the County level designed to adopt incentives for delinquent taxpayers to pay their taxes.[8] This could be certifying the entire taxpayer's delinquent real property to tax sale (instead of a portion thereof,) imposing higher rates of interest on unpaid taxes or imposing penalties in addition to interest for unpaid tax. Clearly, the subjects of budget appropriation and levy of taxes are within the legitimate legislative sphere for the Commissioner's investigations and the privilege protects him against testifying in the subject areas.

**B.** **The County Has Legislative Zoning Authority.**

It is unquestionable that "enactment of a broad zoning ordinance constitutes a legislative act[.] *Baker v. Carlson,* 2018 UT 59, ¶14, 437 P.3d 333, 336. The granting of a conditional use permit is subject to the policy decisions of the legislative branch in enacting the zoning laws. In undertaking the administrative act of granting a conditional use permit, the planning commission

---

[8] Iron County notes for the Court's attention that Black Iron/Utah Iron has failed to pay pre-petition assessed taxes and any post confirmation assessed taxes from 2014 through 2022 (except for 2020.) The failure of Utah Iron to pay taxes when due implicates the County budgeting process, and because the delinquency affects the County's collection rate, the certified tax rate has to be adjusted upwards, resulting in higher taxes for every other taxpayer in the County.

9

must act within the scope of the broader legislative purpose. *See Sevier Power Co., LLC v. Bd. of Sevier County Comm'rs,* 2008 UT 72, P15, 196 P.3d 583, 587 (overall conditional use permit issuance and revocation ordinance modifying existing framework is clearly legislative action in nature).

The County Commission is free to amend its zoning, the general plan and land management code in any way that does not conflict with the County Land Use, Development, and Management Act, Utah Code Ann. §§ 17-27a-101 to -1104 (the "CLUDMA"). *See id.,* § 17-27a-104(1)-(2). [9] The County may legislatively amend zoning to prevent certain conditional uses or to alter the procedure to obtain conditional uses, so long as they do not run afoul of the CLUDMA. *See Sevier Power Co., LLC v. Bd. of Sevier County Comm'rs,* 2008 UT 72, ¶ 16, 196 P.3d 583, 587-588 (alteration of conditional use laws legislative in nature). The Commissioner's attention to such permits is within the legitimate legislative realm of possibility to amend. *See Favors v. Cuomo,* 285 F.R.D. 187, 216-217 (E.D.N.Y. 2012) ("the legislative privilege shields from disclosure pre-decisional, non-factual communications that contain opinions, recommendations or advice about public policies or possible legislation").

The granting of a conditional use permit is subject to the policy decisions of the legislative branch in enacting the zoning laws. In undertaking the administrative act of granting a conditional use permit, the planning commission must act within the scope of the broader legislative purpose. *See Sevier Power Co., LLC v. Bd. of Sevier County Comm'rs,* 2008 UT 72,

---

[9] In this case, the Iron County Treasurer expressed the need for some action to deal with the County's revenue shortfall from unpaid taxes. *See* Declaration of Nicole Rosenberg, dated February 5, 2024, ECF No. 679, setting forth an accurate transcription of her statement of concern at the Iron County Planning Commission Meeting that occurred on June 18, 2020 as to whether any solution could exist. That is precisely the type of question that could generate a move to investigate whether legislative action could resolve such a concern.

P15, 196 P.3d 583, 587 (overall conditional use permit issuance and revocation ordinance modifying existing framework is clearly legislative action in nature).

## CONCLUSION

For the forgoing reasons, respectfully, the Court should grant the Motion.

**DATED** this 20th day of May 2024.

> **PETERS | SCOFIELD**
> *A Professional Corporation*
>
> /s/ David W. Scofield
> DAVID W. SCOFIELD
> *Attorneys for Iron County*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that he caused the **IRON COUNTY'S MOTION FOR PROTECTIVE ORDER PRECLUDING OR LIMITING ON GROUNDS OF LEGISLATIVE PRIVILEGE THE NOTICED DEPOSITIONS OF IRON COUNTY COMMISSIONER MARILYN WOOD AND IRON COUNTY COMMISSIONER MIKE BLEAK AND MEMORANDUM IN SUPPORT** to be filed with the Court through its CM/ECF system, this 20th day of May, 2024, which will serve copies hereof electronically on all parties appearing through their counsel.


                                           <u>/s/ David W. Scofield</u>